# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MIRACLEFAITH DUNKLEBERGER,**

    **Plaintiff,**

    v.                                              Case No. 18-CV-1243

**ANDREW M. SAUL,**

    **Defendant.**

## DECISION AND ORDER

### PROCEDURAL HISTORY

Plaintiff Miraclefaith Dunkleberger alleges she has been disabled since April 14, 2014, due to asthma, migraine headaches, dyslexia, arthritis, fatigue, and depression. (Tr. 78, 232.) In 2014 she applied for disability insurance benefits and supplemental security income. (Tr. 200-10.) After her applications were denied initially (Tr. 76-99) and upon reconsideration (Tr. 100-25), a hearing was held before an administrative law judge (ALJ) on April 20, 2017 (Tr. 30-75). On June 6, 2017, the ALJ issued a written decision, concluding that Dunkleberger was not disabled. (Tr. 13-24.) The Appeals Council denied Dunkleberger's request for review on June 8, 2018. (Tr. 1-6.) This action followed. All

parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 18, 19), and the matter is now ready for resolution.

## ALJ'S DECISION

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1571-1576, 416.971-976. The ALJ found that Dunkleberger "has not engaged in substantial gainful activity since April 14, 2014, the alleged onset date." (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). "In order for an impairment to be considered severe at this step of the process, the impairment must significantly limit an individual's ability to perform basic work activities." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The ALJ concluded that Dunkleberger "has the following severe impairments: diabetes mellitus, type 2; asthma; history of bronchitis; spondylosis of the lumbar spine; status post bilateral foot surgery; obesity; osteoarthritis; history of migraines; gout; and degenerative arthritis." (Tr. 15.)

At step three, the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 4, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

2

404.1525, 404.1526, 416.920(d), 416.925, 416.926) (called "The Listings"). If the impairment or impairments meets or medically equals the criteria of a listing, and meets the twelve-month duration requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. The ALJ found that Dunkleberger "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (Tr. 17.)

Between steps three and four, the ALJ must determine the claimant's residual functional capacity (RFC), "which is [the claimant's] 'ability to do physical and mental work activities on a regular basis despite limitations from her impairments.'" *Ghiselli v. Colvin*, 837 F.3d 771, 774 (7th Cir. 2016) (quoting *Moore*, 743 F.3d at 1121). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-8p. In other words, the RFC determination is a function by function assessment of the claimant's "maximum work capability." *Elder v. Asture*, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ concluded that Dunkleberger has the RFC

> to perform light work . . . except [she] can stand and walk for 4 hours in an 8-hour workday, for 30 minutes at a time; sit for 6 hours in an 8-hour workday, for one hour at a time, can get up and move about for 2 to 3 minutes after sitting for 30 minutes, while remaining on task; can frequently handle, finger, and feel, bilaterally; no concentrated exposure to fumes, odors, dusts, gases, or poorly ventilated areas; no uneven, slippery, or rough terrain or flooring; job should not require math; can occasionally climb ramps and stairs with handrail; no ladders, ropes, or

scaffolds, can occasionally balance, stoop, kneel, crouch and crawl; no hazards such as unprotected heights or operation/control of dangerous moving machinery; can occasionally operate foot controls; limited to moderate noise level (light industrial to office setting); would be off task 8%; must be able to elevate legs, alternating feet, 12 inches from floor/ground while sitting.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1565, 416.965. The ALJ concluded that Dunkleberger "is unable to perform any past relevant work." (Tr. 22.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant can do any other work, considering her age, education, work experience, and RFC. At this step, the ALJ concluded that, "considering [Dunkleberger's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Dunkleberger] can perform." (Tr. 23.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE) who testified that a hypothetical individual of Dunkleberger's age, education, work experience, and RFC could perform the requirements of a bench assembler, sorter/inspector, and packer. (Tr. 22-23.)

After finding that Dunkleberger could perform work in the national economy, the ALJ concluded that Dunkleberger "has not been under a disability . . . from April 14, 2014, through the date of this decision." (Tr. 23.)

4

**STANDARD OF REVIEW**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1151 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *L.D.R.*, 920 F.3d at 1151-52 (quoting *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R.*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**ANALYSIS**

Dunkleberger claims that she has been getting migraine headaches ever since she was a child and that they became worse in 2012 after she hit her head during a motor vehicle accident. (Tr. 64.) At the administrative hearing in April 2017, Dunkleberger testified that she experienced a migraine two or three times per week, each lasting twenty-four to forty-eight hours. (Tr. 47-48, 63-64.) She further testified that her migraines

were sometimes triggered by light or noise. (Tr. 48.) According to Dunkleberger, she was forced to quit her part-time job as a cashier at Burger King because she "called in too much because of [her] migraines and being sick." (Tr. 36-37.)

The ALJ determined that Dunkleberger's history of migraines constituted a "severe" impairment at step two of the sequential evaluation process. (Tr. 15-16.) However, he concluded that the intensity, persistence, and limiting effects of Dunkleberger's claimed symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 19.) According to the ALJ, Dunkleberger's ability to complete certain activities of daily living suggested that she was "not so physically limited as to preclude all substantial gainful activity." (*Id.*) Specifically, "her statements concerning reading and bible study as a hobby suggest her headaches would not interfere in her ability to perform similar tasks on the job." (*Id.*) The ALJ also found that the "medical evidence [did] not support [Dunkleberger's] allegations as to the level of limitation alleged." (*Id.*) With respect to migraines, the ALJ noted that the consultative examiner believed Dunkleberger's prognosis was good with medication and that Dunkleberger reported in January 2015 that Tylenol helped relieve her symptoms. (Tr. 20.)

Dunkleberger argues that the ALJ failed to "engage in a meaningful analysis as to the effect that her migraines have on her ability to work." (ECF No. 10 at 10.) She contends that the ALJ erred in relying on her studying the Bible and reading because there is no

evidence she engaged in those hobbies while suffering from a migraine. (*Id.* at 10-11.) Indeed, her daughter claimed Dunkleberger did not read when she had a migraine. (*Id.* at 11 (citing Tr. 254).) Dunkleberger maintains that the ALJ's lack of analysis was a material error, as she was forced to quit her part-time job due to her migraines, and the VE testified that all work would be precluded if she consistently missed more than two days of work each month. (ECF No. 10 at 12 (citing Tr. 73).)

Dunkleberger does not point to any medical records suggesting that her migraines were disabling. She relies entirely on her own testimony and her subjective complaints of disabling symptoms. An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p; *see also* 20 C.F.R. §§ 404.1529, 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any

7

subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

Substantial evidence supports the ALJ's evaluation of Dunkleberger's history of migraine headaches. First, the ALJ reasonably concluded that the severity of Dunkleberger's alleged symptoms was not supported by the medical evidence in the record. During a visit to her doctor in January 2015, Dunkleberger claimed that she got a migraine every other day and that the nausea that came with them sometimes lasted two to three days. (Tr. 487.) But she also stated that she was not on preventative medication for her migraines; that she was taking over-the-counter Tylenol, which she described as helpful; and that Imitrex had worked for her in the past, though she couldn't afford it. (*Id.*) Also, Dunkleberger denied having a headache during that visit. (*Id.*) At a follow-up visit five weeks later, Dunkleberger indicated that she had not had a migraine since her last visit to the doctor. (Tr. 497.)

Despite claiming to have debilitating headaches several times per week, Dunkleberger did not mention, or expressly denied experiencing, a headache during most of her follow-up appointments. (Tr. 371, 509-13, 517.) During one visit, in January 2016, she did have a "mild headache," which she described as "nothing out of the ordinary." (Tr. 369.) In March 2017 Dunkleberger told her doctor that she continued to have a headache almost every day and that she had a severe headache several times a month. (Tr. 517.) But, again, she also stated that Imitrex "was very helpful" in alleviating

8

her symptoms, and she requested to have that medication refilled and it was. (Tr. 517-19.) Dunkleberger's own statements about the effectiveness of medication were consistent with the consultative examiner's opinion—i.e., that Dunkleberger's migraine prognosis was good if she were to accept preventative medication. (Tr. 366.)

Second, the ALJ reasonably concluded that Dunkleberger's ability to engage in certain activities suggested that her alleged symptoms would not preclude her from working. Dunkleberger testified that she engaged in the following activities: using public transportation, attending church about once a month, trying to study the Bible at least 10 minutes a day, checking Facebook on her tablet, dressing and bathing herself, cooking once a day, grocery shopping once a week, making her bed, and taking out the garbage. (Tr. 40-42, 57.) Likewise, Dunkleberger reported that she had no problems with personal care, that she prepared her own meals, that she drove a car and used public transportation to get around, that she shopped in stores once a week, and that she enjoyed reading and watching TV. (Tr. 265-72.) Those activities were consistent with the activities listed by Dunkleberger's daughter in a third-party function report. (Tr. 250-57.) The ALJ properly considered Dunkleberger's daily activities in assessing the weight attributable to her subjective complaints. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

Dunkleberger takes issue with the ALJ's reliance on her reading and studying the Bible as hobbies. She's right that the record contains no evidence that she engaged in such activities while having a migraine. But the ALJ provided several other reasons, supported

9

by the record, for not fully crediting Dunkleberger's alleged migraine symptoms, including the lack of objective medical evidence, Dunkleberger's own statement that her migraines improved with medication, the consultative examiner's opinion that Dunkleberger's prognosis was good with medication, and Dunkleberger's other reported activities. Any error in relying on those specific hobbies was therefore harmless. *See, e.g.*, *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are, . . . and here the ALJ cited other sound reasons for disbelieving [the claimant].").

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **affirmed**, and this action is dismissed. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of November, 2019.

WILLIAM E. DUFFIN
U.S. Magistrate Judge